In the Matter of DANIEL P. SCHULTZ, Petitioner, *v.* PUBLIC HEALTH COUNCIL, DEPARTMENT OF HEALTH OF THE STATE OF NEW YORK, Respondent.

Third Department, February 20, 1975.

*Norton & Christensen* (*Henry N. Christensen, Jr.*, of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General* (*William J. Kogan* and *Ruth Kessler Toch* of counsel), for respondent.

HERLIHY, P. J. This is a proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court

in the Third Judicial Department by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Public Health Council which denied approval of the petitioner's application for establishment of a nursing home in Port Jervis, New York.

The petitioner is a practicing physician in Port Jervis, New York, and owns a hospital known as Doctor Sunnyside Hospital in that city. On or about December 24, 1970 the petitioner applied for approval of an establishment of a 30-bed nursing home to be operated in conjunction with his existing hospital, in accordance with the requirements of the Public Health Council. On April 3, 1972 the petitioner requested a hearing on his application and, on March 21, 1973, the respondent issued a notice of public hearing limiting the scope thereof to whether " the applicant has failed to satisfy the Public Health Council as to the public need for the existence of the institution at the time and place and under the circumstances proposed as required by § 2801-a(3)(A) of the Public Health Law ".

The hearing was duly commenced on May 30, 1973 at which time it was pointed out to the respondent's representative by the hearing officer that the hearing notice did not make any reference to the financial capabilities involved in the petitioner's application. At that time the respondent's representative indicated that the respondent felt that financial circumstances were within the contemplation of the proceedings and intended to rely thereupon. Specifically, the respondent's representative conceded that, at the time of the application, there was a need for the proposed nursing home and that the respondent's sole objection was that, because of its relationship to the petitioner's existing hospital, it would be too weak financially to approve. The respondent's hearing representative stated that the application should not be granted because the nursing home would be attached " to a hospital that is floundering ". Over the petitioner's objection, the hearing officer adjourned the proceedings in order that the petitioner might reconsider the advisability of proceeding without counsel and the hearings were not again commenced until August 7, 1973. It is to be noted that, at the close of the proceedings on May 30, 1973, the petitioner indicated that he wanted a copy of the minutes of the proceedings.

At the reconvened hearings on August 7, 1973 there was no serious dispute as to the need for a nursing home facility in Port Jervis and at the time and place indicated by the petitioner in his application. The respondent's evidence was primarily limi-

ted to establishing that the petitioner's present hospital was somewhat underutilized in terms of its capacity and that, as a result, the amount paid per patient by the State for Medicaid and/or social welfare patients would be lowered in the near future. It is to be noted that the respondent at no time offered any direct evidence that the petitioner's hospital was in a financially distressed condition or that it was in any danger of financial collapse. Indeed, the sole circumstantial evidence offered was simply that it was being somewhat underutilized in terms of full capacity and that there would be some rate adjustments based upon underutilization in the future. In regard to financial stability, the petitioner testified that he had operated the hospital for 14 years and that the new facility would be financed through private funds. In the prior proceedings of May 30, 1973 it does not appear that the petitioner was sworn as a witness, however, he had stated therein that he had no trouble borrowing such money as he might need from time to time and no one had lost any money in regard to his hospital operation. The petitioner specifically stated that his hospital was not "floundering".

Among other things, the petitioner, upon this review, contends that the only issue noticed for a hearing was that of need and, accordingly, the financial factors urged by the respondent at the hearings were outside of the limits of the hearing notice, and the reliance upon such financial matters by the hearing officer and the respondent in denial of the application was arbitrary and capricious and the denial of due process.

Upon the particular facts in this case, it appears that, at the time of the original hearing on May 30, 1973, the petitioner was duly advised that the financial aspects of the proposed facility would be considered as part of the "need". There would seem no doubt that such considerations would be pertinent to the granting of an application for a nursing home pursuant to the provisions of subdivision 3 of section 2801-a of the Public Health Law, although not an apparent part of that particular provision cited in the hearing notice. Inasmuch as the petitioner received actual notice of the purpose of the hearings prior to any evidence being taken and thereafter appeared at an adjourned hearing with counsel without raising any further objection to proceeding, there was no violation of any due process right due the petitioner. If there were a need for additional nursing home beds, which is not seriously disputed, the financial stability of the applicant would be considered.

The petitioner contends that there was a failure of the respondent to adduce any evidence which would reasonably establish that underutilization of hospital beds at the existing hospital jeopardized the fundamental well being of the proposed nursing home. The proposed nursing home would actually be a part of the hospital and it would utilize the hospital laboratory facilities and other hospital facilities such as laundry, *et cetera*, in common with the hospital. Accordingly, the continued viability of the hospital is reasonably a consideration which the respondent would be expected to consider in reaching a conclusion as to whether or not the instant application should be granted. However, the record is devoid of any substantial evidence or probative evidence which would tend to establish that the hospital was in any financial difficulty or that there was any reasonable future prospect of financial difficulty in regard to the hospital operation. There is certainly no evidence that the hospital was in any way " floundering " and, upon the present record, there was no basis for the respondent's finding of financial instability either actual or potential.

It is interesting to note that the hearing officer's report stated: " 5. The State admits that there is a need for nursing home beds in Orange County where the City of Port Jervis is located."

In his conclusions, he states: " 2. The only issue noticed for this hearing was the issue of public need."

In the minutes of the hearing of August 7, 1973, counsel for the respondent stated:

" We will concede for the sake of the record that there does exist at the moment a need for at least some beds which he [petitioner] requests."

The finding of underutilization of a hospital (owned by petitioner) does not eliminate, on this record, the need for a nursing home as outlined by petitioner and the decision of the Public Health Council of the Department of Health was arbitrary and capricious.

In some instances the matter would be remanded for a further hearing. However, the present record is complete. The application was filed on or about December 24, 1970 and the application should no longer be denied the petitioner. Accordingly, the petitioner's prayer for relief should be granted; the determination annulled and the respondent directed to issue its approval of the petitioner's application.

The determination should be annulled, with costs to petitioner; respondent Public Health Council directed to issue forthwith its approval of the petitioner's application.

GREENBLOTT, KANE, MAIN and LARKIN, JJ., concur.

Determination annulled, with costs to petitioner; respondent Public Health Council directed to issue forthwith its approval of the petitioner's application.